FILED

MAY 23 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ) No. **19 CR 444**
)
v. )
) Violations: Title 18, United States
CLEVELAND CLARK and ) Code, Sections 1344, 1512(c)(2), 1519,
LA COULTON WALLS ) and 1001(a)(2)   **JUDGE LEE**

**MAGISTRATE JUDGE ROWLAND**

## COUNT ONE

The SPECIAL DECEMBER 2017 GRAND JURY charges:

1. At times material to this indictment:

   a. Individual A was in the business of buying, rehabbing, and selling residential properties in neighborhoods located on Chicago's south side. Six properties were titled in the names of construction companies owned by Individual A, one in a trust he controlled, and one in his wife's name. Individual A alone made all the financial and business decisions pertaining to these eight properties.

   b. Defendant CLEVELAND CLARK recruited financially unqualified buyers to obtain mortgage loans from financial institutions to purchase Individual A's eight residential properties.

   c. Polaris Home Funding Corporation was a financial institution, specifically a mortgage lending business that financed or refinanced debt secured by an interest in real estate and whose activities affected interstate commerce.

   d. Bank of America N.A. and Wells Fargo Bank N.A. were financial institutions, the deposits of which were insured by the Federal Deposit Insurance

Corporation. Bank of America and Wells Fargo Bank were in the business of providing mortgage loans related to the purchase of residential property.

e.    Mortgage lending businesses required applicants for mortgage loans to provide truthful information about the applicants' financial condition, including their employment, income, assets, the source of down payment funds, and any payments made to the applicant for purchasing the property, which information was material to lenders' approval, terms, and funding of mortgage loans.

f.    The United States Department of Housing and Urban Development (HUD), through the Federal Housing Administration (FHA), provided insurance guaranteed by the United States government to private lending institutions that financed federally-insured mortgage loans to qualified borrowers. The information contained in loan applications and HUD-1 settlements statements, obtained from supporting documents regarding a borrower's financial condition, including assets, employment, income, bank records, source of down payment funds, and any payments made to the borrower for purchasing the property, was material to the FHA's decision to insure mortgage loans.

2.    Beginning in or about January 2009 and continuing until in or about July 2011, at Chicago, in the Northern District of Illinois, Eastern Division,

CLEVELAND CLARK,

defendant herein, and others known and unknown to the grand jury, knowingly participated in a scheme to defraud Polaris Home Funding Corporation, Bank of America N.A., and Wells Fargo Bank N.A., and to obtain money and funds owned by

2

and under the custody and control of these financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3. It was part of the scheme that defendant CLEVELAND CLARK caused financially unqualified individuals, which CLARK called "straw buyers," to fraudulently obtain mortgage loans from financial institutions in a total amount of approximately $1,365,450 by making and causing to be made materially false representations in documents submitted to these lenders, including real estate contracts, loan applications, employment records, bank statements, and HUD-1 settlement statements, concerning, among other things, the straw buyers' assets, employment, income, bank records, source of down payment funds, and money paid to the straw buyers for purchasing Individual A's eight residential properties. These properties were located at 8808 S. Saginaw Avenue, 9328 S. Yates Boulevard, 8556 S. Exchange Avenue, 8031 S. Burnham Avenue, 7827 S. Maryland Avenue, 8735 S. Colfax Avenue, 6522 S. Rhodes Avenue, and 545 N. Avers Avenue in Chicago.

4. It was further part of the scheme that defendant CLEVELAND CLARK recruited buyers he knew were not qualified to obtain mortgage loans to purchase Individual A's properties at inflated sales prices, knowing that he would help the buyers to submit false documents regarding their financial conditions, including their assets, employment, income, bank records, source of down payment funds, and money they received for purchasing the properties, in order to fraudulently qualify for

3

mortgage loans from Polaris Home Funding Corporation, the Bank of America, and Wells Fargo Bank.

5.    It was further part of the scheme that defendant CLEVELAND CLARK prepared, caused to be prepared, and submitted to lenders false and fraudulent information about the straw buyers' qualifications for mortgage loans, including:

a.    real estate contracts defendant CLARK knew contained materially false and fraudulent information, including inflated sales price for those properties;

b.    loan applications defendant CLARK knew contained false and fraudulent information about the straw buyers' qualifications for mortgage loans, including false and fraudulent information about the buyers' assets;

c.    bank statements defendant CLARK knew contained fraudulently inflated amounts the straw buyers had in their bank accounts;

d.    paystubs defendant CLARK knew contained false information about the straw buyers' employment and income.

6.    It was further part of the scheme that after the sales to the straw buyers, defendant CLEVELAND CLARK received part of the proceeds from the transactions, and paid portions of the proceeds he received to the straw buyers, knowing that the payments he received and the payments to the straw buyers had been concealed from the lenders that financed the mortgage loans.

7.    It was further part of the scheme that defendant CLEVELAND CLARK caused to be prepared and submitted to lenders HUD-1 settlement statements for the

4

eight properties that he knew contained false and fraudulent information in that they did not disclose payments to the straw buyers they used as downpayments on the properties, payments from the loans' proceeds to the straw buyers for purchasing the properties, and kickbacks he received from the proceeds.

8.      It was further part of the scheme that defendant CLEVELAND CLARK misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purpose of those acts.

9.      On or about July 30, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

CLEVELAND CLARK,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing Polaris Home Funding Corporation, a financial institution, to fund a mortgage loan in the amount of approximately $166,920 for a buyer's purchase of 8031 S. Burnham Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1344.

5

## COUNT TWO

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 8 of Count One of this indictment are incorporated here.

2. On or about November 19, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

CLEVELAND CLARK,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing Polaris Home Funding Corporation, a financial institution, to fund a mortgage loan in the amount of approximately $206,196 for a buyer's purchase of 7827 S. Maryland Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1344.

## COUNT THREE

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 8 of Count One of this indictment are incorporated here.

2.     On or about December 7, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

CLEVELAND CLARK,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing Polaris Home Funding Corporation, a financial institution, to fund a mortgage loan in the amount of approximately $176,739 for a buyer's purchase of 8735 S. Colfax Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1344.

## COUNT FOUR

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 8 of Count One of this indictment are incorporated here.

2.     On or about January 29, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

CLEVELAND CLARK,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing Polaris Home Funding Corporation, a financial institution, to fund a mortgage loan in the amount of approximately $245,471 for a buyer's purchase of 6522 S. Rhodes Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1344.

## COUNT FIVE

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 8 of Count One of this indictment are incorporated here.

2.     On or about July 1, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

CLEVELAND CLARK,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing Wells Fargo Bank N.A., a financial institution, to fund a mortgage loan in the amount of approximately $136,451 for a buyer's purchase of 545 N. Avers Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1344.

## COUNT SIX

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1.     Defendant LA COULTON WALLS was an attorney licensed to practice law in Illinois who represented Individual A at the sales of seven of his eight properties, 9328 S. Yates Boulevard, 8556 S. Exchange Avenue, 8031 S. Burnham Avenue, 7827 S. Maryland Avenue, 8735 S. Colfax Avenue, 6522 S. Rhodes Avenue, and 545 N. Avers Avenue in Chicago.

2.     The United States Department of Housing and Urban Development's Office of Inspector General (OIG) was a federal law enforcement agency responsible for investigating fraud involving mortgage loans insured by the FHA.

3.     Beginning in approximately November 2013, OIG agents investigated whether the eight mortgage loans used to purchase Individual A's properties were obtained by fraud. To aid this investigation, the United States Attorney for the Northern District of Illinois opened a grand jury investigation into potential fraud involved in obtaining the loans.

4.     It was material to the grand jury's investigation whether there was fraudulent or false information in the documents used to obtain the mortgage loans, including the real estate contracts, loan applications, and supporting documents regarding each borrower's financial condition, assets, employment, income, bank records, the source of down payment funds; whether any payments were made to the borrowers for purchasing the properties; whether all material facts regarding the financial attributes of the buyers were truthfully disclosed to the lenders; whether

10

the HUD-1 settlement statements truthfully and accurately disclosed the disposition of the loans' proceeds; and if there was fraud involved, who was responsible.

5. As part of the investigation, OIG agents interviewed the participants in the mortgage loans, including the straw buyers, mortgage brokers, persons who prepared and verified employment documents, and Individual A.

6. As part of the investigation, the grand jury issued subpoenas to Individual A's three companies for "copies of any and all documents and records relating to the purchase, rehab and/or repair, lease, and/or sale" for the six properties those companies sold to the straw buyers, including:

> All contracts and/or subcontracts with any person or entity that engaged in any rehab or repair work on any listed property, including all estimates, proposals for work, invoices or bills for work and/or materials, and releases of mechanics liens; contracts for sale of the properties; closing statements and/or closing documents, including payoff letters, disbursement and/or receipt records, and HUD-1 records.

7. On November 7, 2015, Individual A met with defendant LA COULTON WALLS and told him that he and his companies were being investigated by federal criminal investigators for participating in fraudulent mortgage transactions, and that he had made payments to CLEVLAND CLARK and others in connection with the transactions that were not disclosed on the HUD-1 statements. Defendant WALLS told Individual A not to admit any wrongdoing, and advised him to falsely tell the investigators that the payments to CLARK were for construction work performed to rehab the properties before their sale, and therefore did not need to be disclosed on the HUD-1 statements at closing.

8.      On November 24, 2015, defendant LA COULTON WALLS again met with Individual A and initially advised him to prepare and furnish to the federal investigators fraudulent invoices that would reflect construction work CLARK ostensibly performed to rehab the properties, in order to explain payments that were not reflected on the HUD-1 settlement statements. Then, defendant WALLS advised creating fraudulent "scope of services needed" documents that would be maintained only by Individual A's companies, which defendant WALLS said would not require CLARK to verify receiving fraudulent invoices if he were questioned by the investigators.

9.      At a third meeting on December 3, 2015, after examining copies of the grand jury subpoenas issued to Individual A's companies, defendant LA COULTON WALLS told Individual A "Now I'm getting it. It opens my mind up to more that can be done, because I see more." Defendant WALLS then created on his computer a fraudulent "Scope of Construction Work for Independent SubContractors" form for Individual A "to use for all your files" and furnish to the grand jury to purportedly explain undisclosed payments to CLEVELAND CLARK and others from the proceeds of the property transactions. Defendant WALLS gave Individual A multiple blank copies of the "Scope of Construction Work" form, and advised him to hand-write fictitious numbers on the forms that would ostensibly represent payments to subcontractors, including CLARK, for work ostensibly performed rehabbing Individual A's properties and which therefore would not need to be reflected on HUD-1 statements at the closings of those sales. Defendant WALLS told Individual A that

the forms should have "dirt on 'em" and "be a little messy" to reflect that they were purportedly created on construction sites, and that after the forms were filled out Individual A should "beat 'em up" and "crinkle 'em up" so as to "really throw motherfuckers off" when he furnished the forms to the grand jury.

10.     At a fourth meeting on December 16, 2015, Individual A showed defendant LA COULTON WALLS several "Scope of Construction Work" forms he had completed, and defendant WALLS told him "you want it to look like it's a couple years old." Defendant WALLS further advised Individual A to scratch out some of the payment numbers he had written on the forms and write new numbers in the same spaces because "these are worksheets, they not supposed to look pristine and proper." Defendant WALLS then crumpled several of the documents up, told Individual A to "give them copies" so they "can't be analyzed," and to get all HUD-1 statements "out of your house" and "out of your computer" so "if somebody come with a search warrant they ain't gonna find 'em."

11.     Between on or about November 7 and December 16, 2015, at Chicago, in the Northern District of Illinois, Eastern Division,

LA COULTON WALLS,

defendant herein, corruptly and knowingly attempted to obstruct, influence, and impede an official proceeding, that is, an investigation being conducted before the Special August 2015 Grand Jury, in that the defendant engaged in the actions described in paragraphs 7 through 10 of this Count.

In violation of Title 18, United States Code, Section 1512(c)(2).

13

## COUNT SEVEN

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 10 of Count Six of this indictment are incorporated here.

2.      Between on or about December 3 and 16, 2015, at Chicago, in the Northern District of Illinois, Eastern Division,

LA COULTON WALLS,

defendant herein, did knowingly falsify documents with the intent to impede, obstruct, and influence the proper administration of a matter within the jurisdiction of the United States Department of Housing and Urban Development's Office of Inspector General (OIG), an agency of the United States, by fabricating "Scope of Construction Work for Independent SubContractors" forms for Individual A to furnish OIG investigators to explain payments to CLEVELAND CLARK and others that were not disclosed on the HUD-1 settlement statements regarding the properties sold to the straw buyers. Specifically, defendant WALLS advised Individual A to hand-write fictitious numbers on the "Scope of Construction Work" forms defendant WALLS fabricated for Individual A that would ostensibly represent payments to subcontractors for rehab construction work performed on the properties before the closings, which payments therefore would not appear on the HUD-1 statements, and to furnish those fraudulent "Scope of Construction Work" documents to the OIG investigators.

In violation of Title 18, United States Code, Section 1519.

14

## COUNT EIGHT

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 10 of Count Six and paragraph 2 of Count Seven of this indictment are incorporated here.

2.     On July 22, 2016, at Chicago, in the Northern District of Illinois, Eastern Division,

### LA COULTON WALLS,

defendant herein, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the United States Department of Housing and Urban Development's Office of Inspector General (OIG), an agency within the executive branch of the Government of the United States, when WALLS was questioned by OIG agents about whether he had ever seen "Scope of Work For Independent Subcontractors" documents before, or had any involvement in filling them out, and defendant WALLS falsely responded that he did not recall and did not remember seeing them, and denied any involvement in filling them out. Specifically, in response to questions by OIG agents, defendant WALLS stated:

Agent 1:     Show him those, uh, work, scope of – what, I can't remember what they're called . . .

Agent 2:     We were given, we were given these documents after we subpoenaed, uh . . .

Agent 1:     We, we sent … a subpoena to (Individual A) for documents.
Agent 2:     And we got these.

| | |
|---|---|
| Agent 1: | Have you ever seen these documents before? "Scope of Construction Work for Independent Subcontractors"? |
| WALLS: | I don't recall . . . . |
| Agent 1: | Have you, have you ever seen these documents at all? |
| WALLS: | I don't, I don't remember. |

****

| | |
|---|---|
| Agent 1: | Do, have you ever seen a document like this before though? A "Scope of Construction Work"? |
| WALLS: | I don't, I don't remember. |

****

| | |
|---|---|
| Agent 1: | So you don't think you've ever seen these documents before? |
| WALLS: | I don't recall. |
| Agent 1: | You don't recall? |
| WALLS: | You know that's what I'm saying. I don't recall. . . . |

****

| | |
|---|---|
| Agent 1: | We're just seeing if you, have you ever, did you ever see this pre or post, prior, anytime, at the closing? You can't say? |
| WALLS: | I may have, may not have. I don't know. I can't remember. |
| Agent 2: | Okay. |
| WALLS: | Because that's not something that I would be dealing with. 'Cause this doesn't have anything to do with the closing . . . . |

****

| | |
|---|---|
| Agent 2: | Okay. So you wouldn't be involved in filling these out or having anything.... |
| WALLS: | ... that, once again that's (Individual A's) stuff. |

whereas, in truth and in fact, as defendant WALLS then well knew, his statements that he did not recall and did not remember seeing the "Scope of Construction Work" documents before, and was not involved in filling them out, were false because, among other things, defendant WALLS had created those documents in order to corruptly

obstruct the OIG and grand jury's investigation, and had advised Individual A multiple times how to fill them out before furnishing them to the OIG investigators and the grand jury, as more fully set forth in paragraphs 9 and 10 of Count Six of this indictment.

In violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

17